**UNITED STATES of America,
Appellee,**

v.

**Sherwin LONDON, Defendant–
Appellant.**

**Docket No. 04–6108–CR.**

United States Court of Appeals,
Second Circuit.

Sept. 6, 2005.

**20**

---

Steven A. Feldman, Feldman and Feldman, (Arza Feldman), Uniondale, NY, for Appellant, of counsel.

Joel Violanti, Assistant United States Attorney for the Western District of New York (Kathleen M. Mehltretter, Acting United States Attorney, James P. Kennedy, Jr., Assistant United States Attorney), Buffalo, NY, for Appellee, of counsel.

Present: MESKILL, SACK, and B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED as to the conviction and REMANDED to the district court for further proceedings in conformity with *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005).

The defendant-appellant, Sherwin London, appeals from his conviction and 121–month sentence in the United States District Court for the Western District of New York on one count of attempting to possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841, 846(a)(1). He seeks a remand to the district court pursuant to *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), and contends that the district court erred in declining to consider whether he was eligible for a two-level "safety valve" reduction pursuant to

the Sentencing Guidelines range. He also argues that the evidence was insufficient to sustain his conviction, that the district court erred in finding that he voluntarily consented to a search of his hotel room, and that the Western District of New York was the improper venue for his trial.

### I. *Crosby* Remand

■ The district court sentenced London under a mandatory sentencing regime, which, on direct appeal, ordinarily requires that we remand the case to the district court for consideration of the possibility of resentencing pursuant to *Crosby,* 397 F.3d at 118. The government argues, however, that this is one of the "rare case[s] where we can determine without remand that the district court's use of the Guidelines as a mandatory regime was harmless error." *United States v. Sharpley,* 399 F.3d 123, 127 (2d Cir.2005). In this case, however, unlike in *Sharpley,* the district court may reduce the defendant's sentence, whether or not it is likely to do so. A *Crosby* remand is therefore called for. *See United States v. Tesoriero,* 413 F.3d 291 (2d Cir.2005).

### II. Safety Valve

At London's sentencing hearing, the district court declined to decide whether he was entitled to a safety valve under U.S.S.G. § 2D1.1(b)(7) and 18 U.S.C. § 3553(f). Noting that the guidelines ranges with and without the safety valve overlapped at 121 months, the court stated that it "would impose the same sentence under either of the potentially applicable ranges" and was therefore prevented from deciding the issue under this Court's holding in *United States v. Bermingham,* 855 F.2d 925 (2d Cir.1988). Gov.App. at 368. London argues that although the safety valve "may not have affected the sentence determination under the mandatory Guide-

lines, it will under the advisory Guidelines, particularly where the ultimate sentence turns on reasonableness." Def. Br. at 22. He asks this court to "direct" the district court to decide the safety valve issue on remand.

In *Crosby,* however, we commented that under the new sentencing regime "precise calculation of the applicable Guidelines range may not be necessary" when "either of two Guidelines ranges ... is applicable, but the sentencing judge, having complied with [18 U.S.C.] section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies." *Crosby,* 397 F.3d at 112. If, on remand, the district court decides to impose a non-Guidelines sentence regardless of which of the two ranges applies, or if the court decides "in full compliance with now applicable requirements, that under the post-*Booker/Fanfan* regime the sentence would have been essentially the same as originally imposed," *id.* at 118, it will not need to resolve the safety valve issue. If, on the other hand, the court decides that under the current sentencing regime "the original sentence would have differed in a nontrivial manner from that imposed," *id.,* and that resolution of the safety valve issue is necessary in order to determine London's correct sentence, then it will have to decide whether London qualifies for the safety valve.

## III. Insufficient evidence

London asserts that the "government never proved, beyond a reasonable doubt, that [he] believed he possessed heroin." Def. Br. at 25. London argues that based on the evidence presented at trial, he could just as easily have been engaged in "an elaborate scam" to defraud Dubenko as in a deal to sell drugs, *id.,* and that therefore "a reasonable jury must necessarily enter-

tain a reasonable doubt," *United States v. Glenn,* 312 F.3d 58, 70 (2d Cir.2002).

Although "[w]e review a claim of insufficient evidence *de novo," United States v. Jackson,* 301 F.3d 59, 64 (2d Cir.2002), *cert. denied,* 539 U.S. 952, 123 S.Ct. 2629, 156 L.Ed.2d 644 (2003), " '[a] defendant challenging his verdict on sufficiency grounds bears a heavy burden.' " *Id.* (quoting *United States v. McCarthy,* 271 F.3d 387, 394 (2d Cir.2001)) (internal quotation marks omitted). "In considering such a challenge, we review all the evidence presented at trial 'in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government.' " *United States v. Aina–Marshall,* 336 F.3d 167, 171 (2d Cir.2003) (quoting *United States v. Hernandez,* 85 F.3d 1023, 1030 (2d Cir.1996)). "A conviction will be affirmed so long as 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)).

London's insufficiency claim fails. The jury could well have determined, based on London's tape-recorded statements to Dubenko, that London was attempting to sell a substance he believed to be heroin rather than perpetrating a scam. *See, e.g., United States v. Khan,* 53 F.3d 507, 514 (2d Cir.1995). London's statements were corroborated by the circumstances of the crime and by Dubenko's testimony concerning London's behavior. As the government points out, for example, it makes little sense that if London knew he was selling TNT, he would have given Dubenko a second sample for distribution to his customers after Dubenko told him that the first sample did not contain heroin—and then, after giving Dubenko the second sample, remained in town and

agreed to meet Dubenko for lunch the following day. Reviewing the evidence in the light most favorable to the prosecution, as we must, we conclude that a rational trier of fact could have found that London believed what he was selling was heroin.

## IV. Fourth Amendment

London contends that it was error for the district court to admit into evidence the TNT that was found in his motel room because his consent to the search "was procured by trickery and deception and was, hence, involuntary." Def. Br. at 32. Specifically, London argues that the DEA was aware, based on its field tests, that the product he had sold Dubenko was not heroin, yet in obtaining London's consent, the DEA agents informed him that "they wanted consent to search his room for *heroin*. In fact, they actually wanted to search the room for TNT." *Id.* at 32–33 (emphasis in original).

Consent is voluntary if it "was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "Voluntariness is a question of fact determined by a totality of all the circumstances." *United States v. Isiofia,* 370 F.3d 226, 231 (2d Cir.2004) (citation and internal quotation marks omitted). "This Court will not overturn a district court's determination that there was voluntary consent to a search unless that determination was based on clearly erroneous findings of fact." *United States v. Ansaldi,* 372 F.3d 118, 129 (2d Cir.2004). Under this standard, "[if] the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Isiofia,* 370 F.3d at 232 (quoting

*Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (alterations in original)).

■ London relies heavily on DEA Agent Kasprzyk's testimony that prior to obtaining London's consent he had "explained to [London] that we were investigating his involvement in the trafficking of a large quantity of heroin, and that we believe[d] that heroin was in his hotel room." Def. Appx. at 23. According to London, this was an " 'affirmative misrepresentation' " because the government knew the substance was TNT. Def. Br. at 34 (quoting *United States v. Okwumabua,* 828 F.2d 950, 953 (2d Cir.1987)). However, the fact that the samples the DEA had previously obtained from London's room tested negative for heroin does not mean that the officers did not think there might have been heroin in the room. Furthermore, there is no indication in the record that the officers threatened London that they would obtain a search warrant, or intimidated him in any other way. Nor did they lie to him by suggesting that the samples taken from his room had tested positive for heroin. To the contrary, there appears to have been no mention of the samples in the conversation prior to the search. There was no outright deception, no intimidation or coercion of any sort, and thus no basis to think that London's consent was involuntary. *See Hadley v. Williams,* 368 F.3d 747, 749 (7th Cir.2004).

## V. Venue

London argues that venue in the Western District of New York was improper because "the attempt to possess the substance other than heroin ended in the Eastern District of New York." Def. Br. at 40.

We review *de novo* a district court's conclusions regarding venue. *United States v. Geibel,* 369 F.3d 682, 695 (2d

Cir.2004). " 'Because it is not an element of the crime, the government bears the burden of proving venue by a preponderance of the evidence.' " *Id.* at 695–96 (quoting *United States v. Smith,* 198 F.3d 377, 382 (2d Cir.1999)). "This Court reviews the sufficiency of the evidence as to venue in the light most favorable to the government, crediting 'every inference that could have been drawn in its favor.' " *Id.* at 696 (quoting *United States v. Rosa,* 17 F.3d 1531, 1542 (2d Cir.1994)).

"[V]enue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *United States v. Svoboda,* 347 F.3d 471, 483 (2d Cir.2003). " 'Where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue.' " *Id.* at 482 (quoting *United States v. Reed,* 773 F.2d 477, 480 (2d Cir.1985)). "Rather, venue is proper 'in any district in which such offense was begun, continued, or completed.' " *Id.* (quoting 18 U.S.C. § 3237(a)).

 London was arrested and charged with attempted possession with intent to distribute in Angola, New York, in the Western District. Even if London procured the TNT in the Eastern District of New York, as he claims, the evidence indicates that he intended to distribute it in the Western District, where the TNT was ultimately found. And his act of transporting the TNT to Angola, and attempting to sell it to Dubenko there, was plainly "an [intentional] act in furtherance of the charged offense." Thus, even if venue might have been proper in the Eastern District too, there was a sufficient basis for concluding that the Western District was an equally suitable venue.

For the foregoing reasons, the judgment of the district court is AFFIRMED as to the conviction and REMANDED pursuant to *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005) as to the sentence.